Subhan Tariq, Esq.
90-52 171st Street
Jamaica, NY 11432
Ph: 516-900-4529
Fax: 516-453-0490
subhan@tariqlaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Abdus Malik Akbar,<br>                    Plaintiff,<br><br>v.<br><br>US Bank NA; US Bank NA as Trustee for<br>Securitized Trust Greenpoint Mortgage<br>Funding Trust 2006-HE1; Sutherland Asset I<br>LLC; GMAC Mortgage Corporation;<br>Greenpoint Mortgage Funding Inc; and Does<br>1 through 100, inclusive,<br>                    Defendants. | VERIFIED AMENDED COMPLAINT AND<br>DEMAND FOR JURY TRIAL<br><br>Civil Action No. 16cv01056 (GBD)(KNF) |

The Plaintiff, Abdus Malik Akbar (hereinafter referred to as "Plaintiff" or "Borrower"), as and for his Verified Amended Complaint submitted pursuant to Federal Rules of Civil Procedure Rule 15 against defendants "US BANK NA", "US BANK NA AS TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1", "SUTHERLAND ASSET I LLC", "GMAC MORTGAGE CORPORATION", and "DOES 1 THROUGH 100 INCLUSIVE", alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, providing for "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"; and 28 U.S.C. § 1367(a), providing for

"supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." This Court also has jurisdiction over the claims, because this case involves New York common law trusts.

2.      This Court has supplemental subject matter jurisdiction under 28 U.S.C. §§ 1337(a), and 1345; under 12 U.S.C. § 5565(a)(1) with respect to CFPA claims and under 12 U.S.C. § 2614 with respect to RESPA claims.

3.      Specifically, this Court has jurisdiction of this action pursuant to 28 U.S.C. § 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1681, and 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law, as well as the specific grants of federal court jurisdiction under the federal laws represented by TILA, FDCPA, FCRA, RESPA, HOEPA, the Securities Act of 33, the Wire Act, the Mail Fraud Act, Bank Fraud, and RICO, as this is a civil action arising under the laws of the United States.

4.      Plaintiff can and will amend this Complaint as the facts of actual violations of any of the above listed federal laws/statutes become known or ascertained as they occurred prior to the filing of this lawsuit and/or during the course of litigation from any of Defendants' so named failed to perform conditions precedent under Federal Law to resolve certain matters in dispute with Plaintiff and warrant any named Defendants and each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

5.      Venue is proper in this District under 28 U.S.C. §1391(b)(1), because Defendants are residents of and/or conduct business in this District. This Court has personal jurisdiction over Defendants because they are residents of and/or conduct business in this District and under N.Y.

C.P.L.R. 301, New York's long arm statute. The claims also relate to Defendant's role as trustee over a trust created under New York law and/or administered at least in part in New York.

## PARTIES

6.     Plaintiff is a resident of Essex County, New Jersey, and is, in all respects material hereto, sui juris.

7.     Defendant US BANK NA (hereinafter referred to as "USB"), is a national banking corporation, organized and existing under the laws of the state of Minnesota, and doing business in this district. USB can be served with process at 800 Nicollett Mall, Minneapolis, MN 55402.

8.     Defendant US BANK NA AS TRUSTEE FOR GREENPOINT MORTGAGE FUNDING TRUST 2006-HE1 (hereinafter referred to as "Trust"), is a trust organized and existing under the laws of the state of New York, and doing business in this district. It can be served with process at 800 Nicollett Mall, Minneapolis, MN 55402.

9.     Defendant GMAC MORTGAGE CORPORATION (hereinafter referred to as "GMAC") is an inactive corporation organized and existing under the laws of the state of New York, and doing business in this district. GMAC can be served with process by serving its Registered Agent, Corporation Service Company, 80 State Street, Albany, New York 12207.

10.     Defendant SUTHERLAND ASSET I LLC (hereinafter referred to as "Sutherland"), is a limited liability company organized and existing under the laws of the state of Delaware, and doing business in this district. Sutherland can be served with process by serving its registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207.

11.     Defendant GREENPOINT MORTGAGE FUNDING INC (hereinafter referred to as "Greenpoint"), is a corporation organized and existing under the laws of the state of California,

and doing business in this district. Greenpoint can be served with process by serving registered agent, Corporation Service Company, 80 State Street, Albany, New York 12207.

12.     Defendants Does 1 through 100 inclusive are individuals or corporations that aided and abetted in the civil conspiracy to to deny Plaintiff's due process by filing an action without the capacity to sue in May, 2015.  See Exhibit A for Plaintiff's affidavit for the record.

13.     The Plaintiff seeks: actual damages; statutory penalties and damages; the costs of this action; compensatory and punitive damages; a mandated corrected escrow accounting; injunctive relief to stop the foreclosure pending resolutions of the issues being raised herein; attorneys' fees; and other legal, equitable and remedial damages that this Honorable Court may deem necessary or appropriate in its discretion.

## GENERAL ALLEGATIONS

14.     On or about May 9, 2006 (the "Closing"), Plaintiff purchased the property located at 162-166 Mapes Avenue, Newark, New Jersey 07112 (hereinafter the "Property"). The Property was acquired with a mortgage loan in the sum of $600,000.00, originated by Greenpoint (the "loan").

15.     In 2013, Plaintiff received his yearly Escrow Statement from Capital One. According to the escrow statement, the lender was increasing the escrow deposit by at least $26,000.00 more than the year before. A careful review of the components of the escrow clearly showed the Escrow Statement to be in error.

16.     Over many weeks and months, Plaintiff spoke to numerous employees of the lender and servicer and was promised that the Escrow Statement error would be fixed.

17.     Both prior to and subsequent to the Escrow Statement error, Plaintiff remained current on his proper monthly mortgage payment.

18.    As shown in the Securitization Audit obtained on or about August 12, 2015 (see Exhibit B, pages 18 - 20), it wasn't until September 29, 2014 that an Assignment of Mortgage was filed in the Official Records Essex County, New Jersey with the Assignee being: "SUTHERLAND ASSET I, LLC", over 8 years after the Closing Date (on or about August 28, 2006) of the Trust (REMIC).

19.    In or about May 2015, Sutherland filed foreclosure proceedings against Plaintiff, even though Plaintiff was current on his proper monthly mortgage payment and was compliant will all other terms and conditions of Plaintiff's loan.

20.    At all times material hereto Defendants knew of Greenpoint's actions and participated in them.

21.    At all times material hereto, the Trust was required to comply with the terms and condition of its Pooling and Servicing Agreement ("PSA"). The PSA sets forth all of the criteria which each loan which is transferred to the PSA must meet, and further sets forth the procedures that must be filed for each loan that is transferred to the PSA. The PSA which is the subject of this loan is not publicly available.

22.    In addition the Trust was required to comply with NY Trust Law with regard to the acquisition of the subject loan.

23.    At all times material hereto, the servicing of the loan was also subject to the terms and conditions set forth in the PSA.

24.    Trust and Sutherland claim that they are the Owner and Servicer, respectfully, for the Plaintiff's Mortgage and Note. However, neither Trust, nor Sutherland can show proper receipt, possession, transfer, negotiation, assignment, and/or ownership of Plaintiff original Promissory Note and Mortgage, resulting in imperfect security interests and claims.

25.     According to the PSA, Plaintiff's note and Mortgage had to be indorsed and assigned, or transferred, respective, to the trust and executed by multiple intervening parties before it reached the Trust.

26.     Plaintiff is informed and believes, and thereon alleges, that the Note and Mortgage executed by Plaintiff in favor of the original lender and other Defendants was not properly assigned and/or transferred to Defendants in accordance with the PSA and/or New York trust law to the entities making and receiving the purported assignments to this trust.

27.     In view of the foregoing, the Corporate Assignment of Mortgage executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.

28.     More specifically, the Note and Mortgage were allegedly assigned to the Securitized Trust by the August 1, 2006 closing date. Therefore, under the PSA, the purported assignment to the Trust was attempted subsequent to the specified closing date for the Trust as provided in the PSA and is therefore invalid and/or void.

29.     Plaintiff further alleges that even if the Note and Mortgage had been transferred into the Trust by the closing date, the transaction is still invalid and/or void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers/assignments to and from each intervening party.

30.     While Trust claims that it is the "holder and owner" of the Note and the beneficiary of the Mortgage, there are no valid assignments of the foregoing documents to Trust.

31.     Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for Trust, the Note was duly indorsed, transferred and delivered to Trust, including all intervening transfers. Nor can any documents or records be

produced that demonstrate that prior to the closing date, the Mortgage was duly assigned, transferred and delivered to the Trust, via the trustee, including all intervening transfers/assignments.

32.    Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the securitization process as to the Mortgage which renders invalid any security interest in the said mortgage, including, but not limited to:

a.    The splitting or separation of title, ownership and interest in Plaintiff's Note and Mortgage of which the original lender is the holder, owner and beneficiary of Plaintiff's Mortgage;

b.    When the loan was sold to each intervening entity, there were no Assignments of the Mortgage to or from any intervening entity at the time of the sale;

c.    The failure to assign and transfer the beneficial interest in Plaintiff's Mortgage to Trust, in accordance with the PSA of the Defendants, as Securitization Participants;

d.    The failure to indorse, assign and transfer Plaintiff's Note and/or mortgage to Trust, in accordance with the PSA and applicable New York law (NY Code Article 23-A) and/or the Uniform Commercial Code (Articles 3, 8);

e.    No Assignments of Beneficiary or Indorsements of the Note to each of the intervening entities in the transaction ever occurred which is conclusive proof that no true sales occurred as required under the PSA; and

f.    Defendants violated the pertinent terms of the PSA.

33.    Plaintiff, therefore, alleges, upon information and belief, that none of the parties to neither the securitization transaction, nor any of the Defendants in this case, hold a perfected

and secured claim in the Property; and that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

## COUNT I:
## DECLARATORY RELIEF

34.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

35.     An actual controversy has arisen and now exists between Plaintiff and Defendants regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, knew, or should have known that there were errors in the Escrow calculations for Plaintiff's loan. Upon Plaintiff bringing the errors to their attention, they failed to correct the errors, and instead chose to attempt to foreclose on the Plaintiff.

36.     Plaintiff further contends that the Defendants, and each of them, do not have the right to foreclose on the Property because said Defendants, and each of them, did not exercise due diligence in ensuring that the Escrow balances were accurate, and because Plaintiff was, and still is, current on all payments of the correct mortgage payment amount. properly comply with the terms of Defendants' own securitization requirements (contained in the PSA) and falsify or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

37.     Plaintiff requests that this Court find that the purported power of sale contained in the Note and Mortgage has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws

designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants.

38.     Alternatively, Plaintiff requests that this Court find that Defendants had/have no right to foreclosure against the Property.

**COUNT II:**
**FRAUD IN THE CONCEALMENT**

39.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

40.     Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions. By concealing the securitization, Defendants concealed the fact that Plaintiff' loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans. Changing the character of the loan in this way had a materially negative effect on Plaintiff that was known by Defendants but not disclosed.

41.     Defendants knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans.

42.     Defendants intended to induce Plaintiff based on these misrepresentations and improper disclosures.

43.     Plaintiff' reasonable reliance upon the misrepresentations was detrimental. But for the failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants true intentions and profits

from the proposed risky loan. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff home.

44.    Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans.

45.    Defendants were aware of the misrepresentations and profited from them.

46.    As a direct and proximate result of the misrepresentations and concealment of Defendants, Plaintiff suffered damaged in an amount to be proven at trial, including but not limited to costs of the Loan, damage to Plaintiff's financial security, and emotional distress.

47.    Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## COUNT III:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

48.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

49.    The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

50.    This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

51.    Defendants intentionally, knowingly and recklessly misrepresented to the Plaintiff that Defendant's were entitled to exercise the power of sale provision contained in the Mortgage.

In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

52.    Defendants' conduct – fraudulently attempting to foreclose or claiming the right to foreclose on the Property, knowing that they have no right, title, or interest in said Property– is so outrageous and extreme that it exceeds all bounds which is usually tolerated in a civilized community.

53.    Such conduct was undertaken with the specific intent of inflicting emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that they would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants were attempting to collect, and the right to clear title to the Property such that said title will regain its marketability and value.

54.    At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Plaintiff to suffer severe emotional distress.

55.    As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim the right to foreclose on Plaintiff's home, Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

56.    The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

## COUNT IV:
## SLANDER OF TITLE

57.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58.     Defendants, and each of them, disparaged Plaintiff' exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidencing the commencement of judicial foreclosure by a party who does not possess that right.

59.     Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property. By posting, publishing, and recording said documents, Defendants disparagement of Plaintiff' legal title was made to the world at large.

60.     As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer damages.

61.     As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property. Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

62.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to their health and well-being, and continue to suffer such injuries on an ongoing basis. The amount of such damages shall be proven at trial.

63.     At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive him of his exclusive right, title, and interest in the Property.

64.     The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious. Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

**COUNT V:**
**QUIET TITLE**

65.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

66.     All Defendants named herein claim an interest and estate in the Property adverse to Plaintiff.

67.     The claim of Defendants is without any right whatsoever, and Defendants have no right, estate, title, lien or interest in or to the property, or any part of the property.

68.     The claim of Defendants, and each of them, constitutes a cloud on Plaintiff's title to the property.

69.     Plaintiff believes, upon information and belief, that none of the Defendants hold a perfected and secured claim in the Property; and that Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff's estate.

70.     Plaintiff requests that the Court enter a judgment in their favor quieting title as to Defendants, and all persons claiming under them.

<strong>COUNT VI:<br>CIVIL CONSPIRACY</strong>

71.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72.     In connection with the application for and consummation of the loan, Defendants agreed between and among themselves to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

73.     Defendants agreed between and among themselves to engage in the conspiracy to defraud Plaintiff for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiff.

74.     Further, Defendants knowingly and intentionally had the Plaintiff sign away his Fifth and Fourteenth Amendment Rights granting the Defendant the power to non-judicial foreclosure without explaining the implication of so doing.

75.     The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiff.

76.     As a direct and proximate result of the actions of the Defendants resulting in fraud and breaches of fiduciary duties, Plaintiff has suffered damages.

77.     Plaintiff demands an award of actual, compensatory, and punitive damages in an amount not less than $1,500,000.

## COUNT VII
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

78.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79.     Defendants were obligated by either contract or common law to act in good faith and to deal fairly with Plaintiff.

80.     The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.

81.     The Note executed by Plaintiff contained several provisions that deal with the defined "Note Holder". The Defendants hid and concealed the Note Holder from Plaintiff to prevent them from exercising rights afforded to them by the Note and the ability to deal with and negotiate any payoff, changes to or settlement of complaints, and claims with the Note Holder.

82.     Unbeknownst to Plaintiff, their loan was used to create additional debt instruments that purported to obligate him to make payments on loans other than their own toward a securitized pool of mortgages. Further, Plaintiff' FICO score and property values were falsified to induce multiple investors, some of whom may have been betting on the failure of the loan pool in order to reap multiple returns on their investment.

83.     Defendants breached their duty to the Plaintiff by:

    a.  failing to perform loan servicing functions consistent with their responsibilities to Plaintiff

b.  failing to properly supervise their agents and employees including, without limitation, their loss mitigation and collection personnel and their foreclosure attorneys and default servicers

c.  routinely making promises for modification figures when they knew no modification would be granted

d.  making inaccurate calculations and determinations of Plaintiff's obligation and debt

e.  refusing to provide Plaintiff with adequate information and documentation relating to their secured debt to determine the lawful holder in due course of their promissory note

f.  failing to follow through on written, verbal, and implied promises

g.  failing to give Plaintiff the promised modification while publicizing via news releases that they were giving discounts on principal balances

h.  presenting a false and invalid "Assignment" of the loan documents knowing that the assignment was false and invalid.

84.  As a result of these failures to action good faith and the absence of fair dealing, Defendants have caused Plaintiff substantial harm and damages.

## COUNT VIII:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

85.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88.  The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

89.    This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

90.    Defendants negligently, knowingly and recklessly misrepresented to the Plaintiff that the Defendants were entitled to exercise the power of sale provision contained in the Mortgage. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

91.    Defendants' conduct – fraudulently attempting to foreclose or claiming the right to foreclose on the Property, knowing that they have no right, title, or interest in said Property– is so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community.

92.    Such conduct was negligently undertaken and inflicted emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that they would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants were attempting to collect, and the right to clear title to the Property such that said title will regain its marketability and value.

93.    At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with negligent disregard of the probability of causing Plaintiff to suffer severe emotional distress.

94.     As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim the right to foreclose on Plaintiff's home, Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

95.     The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.

## COUNT IX:
## NEGLIGENCE

96.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

97.     The actions of Defendants, as set forth herein, have resulted in the Plaintiff being threatened with the loss of the Property.

98.     This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous or reckless conduct on the part of Defendants.

99.     Defendants negligently, knowingly and recklessly misrepresented to the Plaintiff that the he was in arrears on his mortgage payments, when in fact that arrears was created by the Defendant's with their incorrect accounting in the Escrow account.  In fact, had Defendants corrected the errors in the Escrow accounting, Plaintiff would be current on all his payments.

100.     Defendants' conduct – ignoring obvious errors in the Escrow account; failing to correct said errors; and attempting to foreclose or threatening to foreclose when they caused the alleged default with their incorrect Escrow accounting – is so outrageous and extreme that it exceeds all bounds which are usually tolerated in a civilized community.

101.     Such conduct was negligently undertaken and inflicted emotional distress on the Plaintiff, such that Plaintiff would be so emotionally distressed and debilitated that they would be unable to exercise legal rights in the Property; the right to title of the Property, the right to cure the alleged default, right to verify the alleged debt that Defendants were attempting to collect, and the right to clear title to the Property such that said title will regain its marketability and value.

102.     At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with negligent disregard of the probability of causing Plaintiff to suffer severe emotional distress.

103.     As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home or claim the right to foreclose on Plaintiff's home, Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

104.     The conduct of Defendants, and each of them, as herein described, was so vile, base, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.  See *Diaz v. United California Bank*, 71 Cal. App. 3d 162.

## COUNT X:
## FRAUD

105.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

106.     The actions of Defendants, as set forth herein, have constituted fraud, and have resulted in the Plaintiff being threatened with the loss of the Property.

107.    This outcome has been created by the Defendants when they refused to correct the Escrow error that they knew, or should have known occurred.

108.    The act of making an error in the calculation of an Escrow account can be evidence of fraud.  See *Diaz v. United California Bank*, 71 Cal. App. 3d 162.

109.    In this case, Defendants were informed of the error, stated they would correct it, then refused to correct it.

110.    Instead, they threatened Plaintiff with foreclosure based upon a default they created for their own gain.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter other from engaging in similar conduct.


**PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully request for the following:

**AS TO COUNT I: DECLARATORY RELIEF**

A.    Declare that the Trust does not have an enforceable secured or unsecured claim against the Property;

B.    Declare that Defendants do not have an enforceable secured or unsecured claim against the Property;

C.    Declare that the Plaintiff owns the Property free and clear of all encumbrances of the Defendants or anyone claiming by or through the Defendant;

D.    Award Damages in an amount to be determined by proof at trial;

E.    Award costs, interest, and attorney's fees.

**AS TO COUNT II: FRAUD IN THE CONCEALMENT**

A.    Award Damages in an amount to be determined by proof at trial;

      B.      Award Punitive Damages as allowed by law;

      C.      Award costs, interest, and attorney's fees.

## AS TO COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

      A.      Award Damages in an amount to be determined by proof at trial;

      B.      Award Special Damages in an amount to be determined by proof at trial;

      C.      Award Punitive Damages as allowed by law;

      D.      Award costs, interest, and attorney's fees.

## AS TO COUNT IV: SLANDER OF TITLE

      A.      Award Plaintiff exclusive possession of the Property;

      B.      Determine that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Property;

      C.      Award Damages in an amount to be determined by proof at trial;

      D.      Award Punitive Damages as allowed by law;

      E.      Award costs, interest, and attorney's fees.

## AS TO COUNT V: QUIET TITLE

      A.      Award Plaintiff exclusive possession of the Property;

      B.      Determine that Defendants, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the Property;

      C.      Award Damages in an amount to be determined by proof at trial;

      D.      Award Punitive Damages as allowed by law;

      E.      Award costs, interest, and attorney's fees.

## AS TO COUNT VI: CIVIL CONSPIRACY

      A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Punitive Damages as allowed by law;

C.      Award costs, interest, and attorney's fees.

## AS TO COUNT VII: BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING

A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Punitive Damages as allowed by law;

C.      Award costs, interest, and attorney's fees.

## AS TO COUNT VIII: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Special Damages in an amount to be determined by proof at trial;

C.      Award Punitive Damages as allowed by law;

D.      Award costs, interest, and attorney's fees.

## AS TO COUNT IX: NEGLIGENCE

A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Special Damages in an amount to be determined by proof at trial;

C.      Award Punitive Damages as allowed by law;

D.      Award costs, interest, and attorney's fees.

## AS TO COUNT X: FRAUD

A.      Award Damages in an amount to be determined by proof at trial;

B.      Award Special Damages in an amount to be determined by proof at trial;

C.      Award Punitive Damages as allowed by law;

D.      Award costs, interest, and attorney's fees.

E.     Mandate Defendant's provide an Escrow accounting, copies of the front and back of all checks disbursed from the Escrow account, and a Forensic Audit of the Escrow account to ensure compliance with all rules and regulations.

F.     Mandate that all Escrow errors be timely corrected, all erroneous reports to any and all credit reporting agencies be corrected to show all loan payments have been made on time, any and all late payment, foreclosure related and other erroneous fees stemming from the Escrow error be removed from the Plaintiff's account, and that all of Plaintiff's payments be properly credited to his account.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, plaintiff demands a trial by jury for issues so triable.

Dated:   Queens, New York
         February 24, 2016

Respectfully Submitted,

Subhan Tariq, Esq.
90-52 171st Street
Jamaica, NY 11432
Ph: 516-900-4529
Fax: 516-453-0490
subhan@tariqlaw.com
*Attorney for Plaintiff*

## VERIFICATION

The undersigned, an attorney, duly admitted to practice law before this court, hereby says:

That deponent is the attorney of record for the plaintiff in the within action; that deponent has read the foregoing and knows the contents thereof, that the same is true to the deponent's own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to these matters, deponent believes them to be true. Deponent further says that the reason this verification is made by deponent and not by the plaintiff is that the plaintiff resides in a county other than that in which deponent maintains their offices.

The undersigned affirms that the foregoing statements are true.


Dated: Queens, New York
       February 24, 2016

Subhan Tariq, Esq.
90-52 171st Street
Jamaica, NY 11432
Ph: 516-900-4529
Fax: 516-453-0490
subhan@tariqlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a copy of the Summons and Complaint will be served upon defendants listed

below in compliance with Fed. R. Civ. P. Rule 4:

US Bank NA
800 Nicollett Mall
Minneapolis, Minnesota 55402

US Bank NA as Trustee for Securitized Trust Greenpoint
Mortgage Funding Trust 2006-HE1
800 Nicollett Mall
Minneapolis, Minnesota 55402

Sutherland Asset I, LLC
% Corporation Service Company
80 State Street
Albany, NY 12207

Greenpoint Mortgage Funding Inc
% Corporation Service Company
80 State Street
Albany, NY 12207

GMAC Mortgage Corporation
% Corporation Service Company
80 State Street
Albany, NY 12207

Dated:   Queens, New York
February 24, 2016

Subhan Tariq, Esq.
90-52\171 Street
Jamaica, NY 11432
Ph: 516-900-4529
Fax: 516-453-0490
subhan@tariqlaw.com
*Attorney for Plaintiff*